IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION


RODNEY RUTLEDGE                                          PETITIONER


vs.              Civil Case No. 2:06CV00103 HLJ


LARRY NORRIS, Director,
Arkansas Department of Correction                       RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## **DISPOSITION**

Now before the court is a petition for a writ of habeas corpus by Rodney Rutledge, an inmate of the Arkansas Department of Correction. Petitioner was convicted by a jury on March 2, 2000, of capital murder, and he received a sentence of life imprisonment without parole. The Arkansas Supreme Court affirmed his conviction on June 14, 2001. Rutledge v. State, 345 Ark. 243 (2001). He filed a timely petition for post-conviction relief under Rule 37 of

the Arkansas Rules of Criminal Procedure, which the trial court denied without a hearing on December 5, 2002 (Respondent's Exhibit C).  The Arkansas Supreme Court granted Petitioner's motion for a belated appeal of that order, Rutledge v. State, 355 Ark. 499 (2003), and affirmed the trial court's denial of relief in part, but remanded for consideration of two issues.  Rutledge v. State, 361 Ark. 229 (2005).  The trial court entered an amended order on April 20, 2005, denying relief on the remanded issues (Respondent's Exhibit D).  Petitioner appealed, contending the trial court should have held a hearing on remand (Respondent's Exhibit E), but the Arkansas Supreme Court affirmed in a per curiam opinion, Rutledge v. State, CR03-1280 (Ark. Dec. 1, 2005) (Respondent's Exhibit F).

In the present petition, Petitioner raises the following grounds for relief:

> 1.   Trial counsel was ineffective in failing to obtain Petitioner's medical records from the day of the shooting, which would have established that the shooting was an accident and contradicted the State's theory that he acted with premeditation and put a gun to the victim's head and fired;
>
> 2.   Trial counsel was ineffective in failing to consult and retain a forensic pathologist to contradict the State's argument concerning stippling of gunshot residue found on the victim;
>
> 3.   Trial counsel's representation was so deficient it resulted in the conviction of one who is actually innocent of the crime; and
>
> 4.   The Arkansas Supreme Court used erroneous or biased standards in denying Petitioner's post-conviction appeals.

Respondent admits Petitioner is in his custody pursuant to his capital murder conviction and sentence, and that he has exhausted his state court remedies.  He contends, however, the petition should be dismissed because ground one is procedurally barred; ground two was considered by the state court, and its resolution of the claim was not contrary to, or an unreasonable application of, Supreme Court law, and it was not based on an unreasonable determination of the facts in light of the evidence presented; grounds three and four are procedurally barred and they have no merit.


I.

In ground one Petitioner argues counsel was ineffective because he failed to rebut the State's charge of capital murder by obtaining medical records reflecting he was also shot during the altercation with the victim, which, Petitioner argues, would have shown the shooting was accidental.  On direct appeal, Petitioner contended the trial court should have granted his request for a mistrial based on the fact that the prosecutor withheld the medical records from the defense.  Rutledge v. State, 345 Ark. at 247.  The State contended Petitioner had access to his own medical records and, thus, there was no prejudice, and that Petitioner did not preserve the point for review because he did not obtain a ruling from the trial court on his mistrial motion.  The Arkansas Supreme

Court found counsel had not preserved this issue for review.  Id. at 248.

In his Rule 37 petition, Petitioner asserted counsel was ineffective for failing to obtain his medical records.  The trial court denied relief on this claim, finding the medical records were introduced at trial during Petitioner's testimony and Petitioner had not shown prejudice (Respondent's Exhibit C, p. 2-3).

Respondent argues here that Petitioner procedurally defaulted this claim because he did not raise it in his Rule 37 appeal.  The record reflects, however, that the Arkansas Supreme Court considered this issue in its decision affirming in part and remanding in part.  Rutledge v. State, 361 Ark. at 234. Petitioner's sole ground on appeal was that the trial court erred in not conducting an evidentiary hearing on all his claims, one of which was counsel's failure to obtain the medical records.  The Arkansas Supreme Court found that, although the trial court's statement that the records had been introduced during Petitioner's testimony was erroneous, the records had been introduced at the close of all the evidence.

> Here, the medical records were introduced into evidence. Trial counsel did argue at trial that if the medical records had been available earlier, he would have used them to cross examine a witness, and presented them to the jury with greater emphasis. Even so, we cannot say the trial court was clearly erroneous in finding the facts presented did not indicate a different outcome would have resulted if counsel had obtained the records before trial. We affirm on this point.

5

Id. at 235.

Federal habeas relief may not be granted on any claim addressed on the merits by a state court, unless the petitioner can establish the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law ... or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) and (2).

> '[A]n unreasonable application of [the Supreme Court's] precedent' occurs 'if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts.' Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J.). To be unreasonable, the state court's application of Supreme Court precedent 'must have been more than incorrect or erroneous.' Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Rather, the application 'must have been objectively unreasonable.' Id. (internal quotation omitted).

Garcia v. Mathes, 474 F.3d 1014, 1017 (8th Cir. 2007).

The standard for considering a Sixth Amendment ineffective assistance of counsel claim was set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), where the Supreme Court held that a petitioner must show his attorney's representation fell below an objective standard of reasonableness and that he was prejudiced thereby. "Counsel's performance was deficient if it fell 'outside the wide range of professionally competent assistance.'" Sherron v. Norris, 69 F.3d 285, 290 (8th Cir.1995)

(quoting Strickland, 466 U.S. at 690).  Actual prejudice is shown where a petitioner establishes there is a reasonable probability that, but for counsel's unprofessional error, the result at trial would have been different.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000).  A reasonable probability is a probability sufficient to undermine the reviewing court's confidence in the outcome of the trial.  Johnson v. Lockhart, 921 F.2d 796 (8th Cir. 1991).

Petitioner argues in ground IV that the Arkansas Supreme Court used an incorrect standard to review his claims of ineffective assistance of counsel, when the court stated it could not say "the trial court was clearly erroneous in finding the facts presented did not indicate a different outcome would have resulted if counsel had obtained the records before trial," Rutledge v. State, 361 Ark. at 235, instead of considering whether there was a "reasonable probability" that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, the Strickland standard.

Although the state court did not cite Strickland or any of the above cases, it did cite an Arkansas case, Noel v. State, 342 Ark. 35 (2000), which cited and relied on Strickland.  The passage quoted by Petitioner cannot be read in isolation.  The state court also stated the following:

> To prevail on a claim of ineffective assistance of counsel, the claimant must first show that counsel's performance was deficient, with errors so serious that counsel was not functioning as the "counsel" guaranteed

by the Sixth Amendment, and claimant must also show that this deficient performance prejudiced his defense through a showing that petitioner was deprived of a fair trial. Noel v. State, 342 Ark. 35, 26 S.W.3d 123 (2000). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. To rebut this presumption, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., that the decision reached would have been different absent the errors. Id. at 38, 26 S.W.3d at 125. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. Id.

Here, the medical records were introduced into evidence. Trial counsel did argue at trial that if the medical records had been available earlier, he would have used them to cross examine a witness, and presented them to the jury with greater emphasis. Even so, we cannot say the trial court was clearly erroneous in finding the facts presented did not indicate a different outcome would have resulted if counsel had obtained the records before trial. We affirm on this point.

Rutledge v. State, 361 Ark. at 235.   I find the state court articulated the correct Six Amendment standards and reviewed the facts under those standards.   Petitioner has not sufficiently explained even in these proceedings how he was prejudiced by the later production of the medical records.   I do not find the state court's resolution of ground one was objectively unreasonable.   I also find Petitioner in not entitled to relief on ground IV.

II.

In ground two, Petitioner argues trial counsel was ineffective because he failed to consult and retain a forensic pathologist to

contradict the State's evidence from Dr. Sturner concerning the distance of the gun from the victim's head when Petitioner discharged it.  Petitioner contends counsel should have obtained testimony from a forensics expert to the effect that the stippling on the victim's scalp "was the result of shared 'stippling' caused as a result of the gunshot either first or simultaneously be (sic) fired through the petitioner's hand when the victim was shot" (Petition, p. 11).

Although Respondent states this issue was raised and addressed in Petitioner's Rule 37 proceedings, the court finds it is not the same issue.  Respondent did not submit the Rule 37 petition, but it appears from the record that Petitioner asserted in state court that a forensics expert "'would have tested the fatal bullet and victim's clothing for petitioner's blood/DNA,' which 'would be evidence of an accident (positive tests), also rebutting Ms. Leavy's testimony that the shooting was intentional' and which 'would have caused reasonable doubt in juror's minds as to intent, finding him innocent of capital murder.'" Respondent's Exhibit D, p. 4.

There is no need to determine whether ground two is procedurally barred, however, because, even if it were properly before the court, it would not entitle Petitioner to relief. First, the court does not interpret the forensics expert's testimony Petitioner set forth in his petition to be that there was

stippling near the wound. However, even if Petitioner's interpretation were correct, his assertion that a forensics expert would testify that the stippling on the victim's scalp was "shared" is pure speculation. In addition, even if counsel had presented this evidence, it is not clear this would have affected the outcome of the trial. The Arkansas Supreme Court summarized the evidence against Petitioner on direct appeal as follows:

> The pertinent facts of this case are garnered from the testimony of the victim's sister, Korey Leavy, Little Rock police officers, and other witnesses at trial. On September 1, 1998, Tammy Williamson, the mother of Rutledge's twin children, was at the home of her sister, Korey Leavy, in Little Rock. Rutledge had called Williamson earlier that day and went to Leavy's home later that morning. After arriving, Rutledge asked Williamson to come outside with him, but she declined and requested that he come into the house instead and sit down. At some point, he walked away from the doorway of Leavy's house, but later he returned, entered the house, and moved toward Williamson, who was seated in a chair. He hit Williamson on the left side of her head with the butt of a pistol. He then grabbed her by the hair, pulled her out of her chair, and dragged her to the kitchen. In the process, he pulled her shirt off. Leavy attempted to pick her sister up off the floor by grabbing her around the waist but was unsuccessful. She also asked Rutledge "to let her [sister] up." He refused. Rutledge next pointed the .32 caliber pistol to Williamson's head and shot her. Leavy did not remember Rutledge being shot in his hand during the fracas. According to the State's chief medical examiner, Dr. William Quentin Sturner, the fatal gunshot wound was fired at contact or near-contact range.
>
> After the shooting, Leavy ran to the back of her house and called the Little Rock Police Department. She continued to observe Rutledge through a window and saw him carry Williamson over his shoulder towards his car. Rutledge then placed the victim in the back seat and drove away. Little Rock police officers apprehended Rutledge as he was about to cross the I-30 bridge over

the Arkansas River, and he was placed under arrest. He was taken to the University Hospital in Little Rock because of a wound to his left hand.

At trial, Rutledge, who was twenty-six years old at the time of the murder, stated that he and Williamson had grown up together. He admitted to having a criminal record and said that he had been drinking and experimenting with drugs since eleven or twelve years of age. He testified that he had been in prison in 1997 or 1998, and that due to his prior contact with Williamson, he believed that she would accept him again after prison, as she had in the past. He was released from prison on Friday, August 28, 1998, four days before the murder. Upon his release, Williamson told him that she had met somebody else. He admitted that he then sought out drugs and got high. In the process, he apparently burglarized a pharmacy, and Little Rock police officers began looking for him. He stated that he was "on drugs" constantly after his release from prison and had not slept. He said that on the day of the murder, his mother dropped him off at his grandmother's house so that his grandmother could take him to his parole officer. At that point, he stated that he wanted to see Williamson, and he called her. He then grabbed some pills and a pistol off the top of his grandmother's refrigerator, took the keys to her car, and drove to Leavy's house. He testified that while at Leavy's house, he hit Williamson with the pistol and the pistol went off, with a resulting gunshot wound to his left hand. He said he did not realize immediately that the bullet from his pistol had also hit Williamson.

Rutledge v. State  345 Ark. at 244-245.  I do not find Petitioner has established he was prejudiced by counsel's failure to obtain the testimony of a forensics expert, and he is not entitled to relief on ground two.

### III.

Petitioner characterizes his third ground as a claim of actual innocence, which he is apparently attempting to tie to a claim of

11

ineffective assistance of counsel because his attorney did not obtain a ruling on the motion for a mistrial based on the prosecution's failure to provide Petitioner's medical records. The court first notes that a claim of actual innocence is not a free-standing substantive basis for habeas relief. Herrera v. Collins, 506 U.S. 390, 404 (1993). It may only be asserted as a "gateway" through which a petitioner must pass before the court may consider procedurally defaulted claims, absent a showing of cause and prejudice. Schlup v. Delo, 513 U.S. 298, 324 (1995).

Respondent contends this claim is procedurally barred, but even if the ineffective assistance of counsel aspect of the claim were properly before the court, it would not entitle Petitioner to habeas relief. The Arkansas Supreme Court made the following findings regarding the motion for a mistrial:

> This court has made it clear in the past that it is up to an appellant to obtain a clear ruling on an issue in order to preserve that point for appeal. See, e.g., Enos v. State, 313 Ark. 683, 858 S.W.2d 72 (1993); Hamm v. State, 301 Ark. 154, 782 S.W.2d 577 (1990). In the case at bar, however, defense counsel made the following statement with regard to his mistrial motion:
>
> Defense Counsel: Your Honor, I would suggest that they have not complied with our motion for discovery. They have violated Brady. And, under the circumstances, I feel obligated on behalf of my client to at this time move for a mistrial.
>
> Defense counsel followed this motion by arguing several other points to the circuit court to which the State responded. The response from the circuit court was this:
>
> Defense Counsel: We would also ask, your Honor, that the officer who is identified as transporting [Rutledge] be

made available for cross-examination. And that's one of the reasons I raised the Brady question. If I had had [the medical records] when that particular officer was testifying, it is my opinion that I probably would have been able to get more information which is contained within the contents of particular [ sic ] document.

The Court: Well, I don't think that that would be necessary. If the document comes in, then the <u>Brady</u> issue is moot.

Defense Counsel: Probably so.

Later, this discussion transpired:

The Court: Well, the Court's just going to let the [medical record] in. And I think that will take care of most arguments.

Defense Counsel: Thank you, your Honor.

Thus, apart from the fact that Rutledge's medical records were always available to him before the trial, it appears that not only did he fail to obtain a ruling on this issue, but his counsel acquiesced in the circuit court's conclusion that the issue would be moot after the admission of the medical records into evidence. Certainly, Rutledge did not urge the court to rule on his mistrial motion following the court's comments on mootness. On the contrary, he seems to have agreed that the matter was moot. This issue is not preserved for our review.

<u>Rutledge v. State</u>, 345 Ark. 243, 248 (2001).

It appears to this court that the trial court considered the issue moot and the outcome would not have been different, even if counsel had obtained a ruling on the motion.   In addition, the Arkansas Supreme Court referred to the fact that the records were always available to Petitioner prior to trial, which indicates to this court that, even had the issue been preserved, Petitioner would not have prevailed.   Thus, I find Petitioner has not

13

established sufficient prejudice from counsel's failure to obtain a ruling on his motion for a mistrial.

IT IS THEREFORE ORDERED that this petition be, and it is hereby, dismissed with prejudice.  The relief prayed for is denied.

SO ORDERED this 3rd day of May, 2007.

_Henry L. Jones, Jr._
United States Magistrate Judge